# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF GEORGIA
# WAYCROSS DIVISION

OTTIS TYRONE GAINER, JR.,

    Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,

    Defendant.

CIVIL ACTION NO.: 5:14-cv-84

## **ORDER and MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff contests the decision of Administrative Law Judge Donald B. Fishman ("the ALJ" or "ALJ Fishman") denying his claim for a period of disability and disability insurance benefits. Plaintiff urges the Court to reverse the ALJ's decision and award him benefits. Defendant asserts the Commissioner's decision should be affirmed. For the reasons which follow, I **RECOMMEND** that the decision of the Commissioner be **AFFIRMED**.

## BACKGROUND

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on June 13, 2011, alleging that he became disabled on June 13, 2008, due to chronic pain from degenerative disc and joint disease, carpel tunnel syndrome, and past injuries.[1] (Doc. 13.) After his claim was denied initially and upon reconsideration, Plaintiff filed a timely request for a hearing. (Doc. 11-4, p. 27.) On January 10, 2013, ALJ Fishman conducted a video hearing at which Plaintiff, who was represented by counsel, appeared and testified in Waycross, Georgia, while the ALJ was in Savannah, Georgia. Ronald J. Spitznagel, a vocational expert,

---

[1] Plaintiff sustained injury to his heart and lungs after a stabbing in 1987. In 1989, Plaintiff suffered a significant hip injury after being thrown from his vehicle during a car accident. (Doc. 13, p. 3.)

also appeared at the hearing. ALJ Fishman found that Plaintiff was not disabled within the meaning of the Act. (Doc. 11-2, p. 31.) The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and the decision of the ALJ became the final decision of the Commissioner for judicial review. (Id. at p. 3.)

Plaintiff, born on March 25, 1964, was forty-nine (49) years old when ALJ Fishman issued his final decision. He has a tenth grade education. (Id. at p. 59.) Plaintiff's past relevant work experience includes employment as a construction worker, retail and stock clerk, and hospital janitor. (Id. at p. 2; Doc. 11-6, pp. 30, 57.)

## DISCUSSION

### I. The ALJ's Findings

Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person is disabled. 20 C.F.R. §§ 404.1520 & 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987). The first step determines if the claimant is engaged in "substantial gainful activity." Yuckert, 482 U.S. at 140. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d) & 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004). If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S.

at 141. If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform his past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment. . . of the claimant's remaining ability to do work despite his impairments." Stone, 503 F. App'x at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is able to make adjustments to other work in the national economy, considering his age, education, and work experience. Phillips, 357 F.3d at 1239. Disability benefits will be awarded only if the claimant is unable to perform other work. Yuckert, 482 U.S. at 142.

In the instant case, the ALJ followed this sequential process to determine that Plaintiff did not engage in substantial gainful activity during the period from his alleged onset date of June 13, 2008, through the date of ALJ Fishman's decision on February 22, 2013. (Doc. 11-2, p. 34.) At Step Two, the ALJ determined that Plaintiff had degenerative disc disease of the lumbar spine, status-post ulnar release, carpal tunnel syndrome, and degenerative joint disease of the right hip. (Id.) However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or medically equal a listed impairment. (Id. at p. 35.) The ALJ found that Plaintiff had the residual functional capacity, through the date of his decision, to perform less than the full range of light work.[2] (Id. at p. 36.) At the next step, ALJ Fishman noted Plaintiff was unable to perform his past relevant work as a construction worker, operating

---

[2] ALJ Fishman found that, while Plaintiff should not climb ladders, ropes, and scaffolding, and should avoid overhead lifting, crawling, and frequent exposure to concentrated vibrations, Plaintiff could lift ten to twenty pounds occasionally, sit for eight hours out of an eight-hour work day, stand and walk for four hours out of an eight-hour work day, stand and walk in thirty-minute increments, and kneel and climb stairs occasionally. (Doc. 11-2, p. 36.)

3

engineer, right-of-way supervisor, or hospital cleaner. (Id. at p. 39.) The ALJ determined at the final step that Plaintiff had the residual functional capacity to perform work as a maintenance dispatcher, information clerk, and telephone solicitor. (Id. at p. 40.)

## II.    Issues Presented

Plaintiff contends the ALJ abused his discretion by failing to consider and incorporate Plaintiff's mental health impairments into his determination of Plaintiff's residual functional capacity and for improperly discounting the opinion of Dr. Marc W. Eaton, Ph.D. Relatedly, Plaintiff argues that the Appeals Council erred by not reversing the ALJ's decision after Plaintiff submitted additional health records. Plaintiff finally contends the ALJ failed to analyze his credibility in a proper manner.[3]

## III.    Standard of Review

It is well-established that judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence," and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence which a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496

---

[3]  Though Plaintiff was previously represented by counsel, he now appears before the Court pro se. Accordingly, the Court will liberally construe Plaintiff's brief and incorporate his attorney's prior arguments contesting the ALJ's decision into his brief.

4

F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the Court must also determine whether the ALJ applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates that the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

## IV. Residual Functional Capacity

Plaintiff contends ALJ Fishman abused his discretion by failing to accord proper weight to the medical source opinion of Dr. Eaton, an examining psychologist, and, therefore, did not consider the effect of Plaintiff's mental impairments on his residual functional capacity. (Doc. 1-1, p. 55.) Plaintiff also contends the Appeals Council erred by failing to consider new evidence that confirmed his attendance at mental health counseling sessions during March and April 2012. (Doc. 11-10, pp. 631–77; Doc. 13, p. 4.) According to Plaintiff, this subsequently submitted evidence refuted the ALJ's prior finding that Plaintiff had never received treatment for mental impairments and, therefore, compelled the Appeals Council to reverse the ALJ's decision.

Defendant responds that the ALJ adequately explained the basis of his decision and argues that substantial evidence supports the ALJ's determination of Plaintiff's residual functional capacity. (Doc. 14, pp. 7–9.) Defendant further responds that the Appeals Council properly denied Plaintiff's request for review because, notwithstanding the introduction of Plaintiff's mental health counseling records, the ALJ's decision was not contrary to the weight of evidence.

### A. The ALJ's Determination

When determining how much weight to give to a medical opinion, the ALJ must consider several factors, including: (1) whether the doctor has examined the claimant; (2) the length,

nature, and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole;" and (5) the doctor's specialization. 20 C.F.R. §§ 404.1527(c) & 416.927(c). These factors apply to both examining and non-examining doctors. 20 C.F.R. §§ 404.1527(e) & 416.927(e). A treating physician's opinion must be given substantial or considerable weight unless "good cause" is shown to the contrary. See 20 C.F.R. § 404.1527(c)(2). Conversely, the ALJ does not have to defer to the opinion of a non-treating physician who conducted a single examination. See McSwain v. Bowen, 814 F.2d 617, 619 (11th Cir. 1987). Furthermore, the ALJ may reject the opinion of any physician if the evidence supports a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985).

The ALJ accorded relatively little weight to Dr. Eaton's opinion that Plaintiff suffers from anger, depression, and a personality disorder, as well as Dr. Eaton's conclusion that these psychological ailments exacerbate his chronic pain.. (Doc. 11-2, p. 35.) Because Dr. Eaton is an examining physician, as opposed to a treating physician, the ALJ had discretion to discount the opinion. See Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1160 (11th Cir. 2004); McSwain, 814 F.2d at 619 (opinions of one-time examiners are not entitled to deference because they are not treating physicians); Denomme v. Comm'r, Soc. Sec. Admin., 518 F. App'x 875, 877 (11th Cir. 2013) (ALJ does not have to defer to the opinion of an examining physician who did not treat claimant). The ALJ provided valid reasons for discounting Dr. Eaton's opinion. First, ALJ Fishman noted that Plaintiff did not previously complain of mental impairments to his treating physicians. (Doc. 11-2, p. 35.) Second, Dr. Eaton lacked a longitudinal treatment history with Plaintiff, having only examined him on a single occasion. (Id.) ALJ Fishman also noted that Plaintiff's behavior changed during Dr. Eaton's psychological examination in

6

comparison to his behavior during examinations by Dr. Stanley W. Wallace, M.D., a consultative examiner. (Id.) Notably, Dr. Wallace's mental status exam on October 19, 2011, yielded normal results.[4] (Doc. 11-9, p. 92.) Because Dr. Eaton only examined Plaintiff on one occasion, largely based his medical opinion on Plaintiff's subjective statements, and the record contradicts Dr. Eaton's findings, ALJ Fishman did not abuse his discretion by according little weight to Dr. Eaton's opinion.

Further, Dr. Eaton's opinion supports the ALJ's determination that Plaintiff is not disabled. (Doc. 11-9, pp. 63–65.) Dr. Eaton's mental status examination indicated that Plaintiff was logical, coherent, and exhibited no obsessions, compulsions, phobias, or antisocial tendencies. (Id.) Dr. Eaton opined that Plaintiff could understand and execute simple instructions without difficulty, was capable of sustaining focused attention, and could likely respond properly to stress. (Id. at 65.) Dr. Eaton concluded that Plaintiff appeared capable of performing an array of daily living activities, and, in the absence of anger, would likely be capable of interacting with the public, supervisors, and co-workers. (Id. at 64–65.) Therefore, despite Dr. Eaton's conclusion that Plaintiff is mentally impaired, his findings did not indicate that Plaintiff's mental impairments limit his ability to work. Accordingly, ALJ Fishman did not abuse his discretion by discounting Dr. Eaton's mental health examination and opinion in his determination of Plaintiff's residual functional capacity.

Finally, regardless of the weight accorded to Dr. Eaton's opinion, ALJ Fishman's residual functional capacity determination is supported by substantial evidence. The ALJ noted that, while Plaintiff filed a workers' compensation claim due to an injury sustained in 2008, he was released to return to work without restrictions on April 28, 2009. (Doc. 11-5, p. 4; Doc. 11-

---

[4] The ALJ noted that the opinions of Dr. Wallace are more persuasive because they derived from an in-person examination, his reports cite facts upon which his conclusions are based, and his opinions are consistent with the record as a whole. (Doc. 11-2, p. 38.)

2, p. 36.) Treatment records from treating neurologist Dr. Stephen G. Pappas dated October 26, 2010, indicated that Plaintiff had full motor strength with normal muscle tone, no atrophy, and normal station and gait. (Doc. 11-9, p. 47.) On November 2, 2011, state agency physician Dr. Dawn Ferguson opined that Plaintiff could perform a reduced range of light work. (Doc. 11-10, pp. 2–10.) State agency physician Dr. Bato Amu also opined on February 2, 2012, that Plaintiff could perform a reduced range of light work. (Id. at pp. 18–26.) Similarly, Dr. Wallace reported that Plaintiff was capable of performing medium work requiring frequent lifting and carrying of objects weighing up to twenty-five (25) pounds, could occasionally lift up to fifty (50) pounds, had no severe restriction in his ability to walk or sit, and could perform work-related activities six to eight hours per day. (Doc. 11-9, p. 94.) The ALJ also noted that nerve conduction studies revealed only mild carpel tunnel syndrome on the left and only mild to moderate carpal tunnel syndrome on the right. (Id. at p. 54–55; Doc. 11-2, p. 38.) Furthermore, as discussed above, Dr. Eaton's psychological assessment suggests that Plaintiff is able to perform a wide array of work-related activities despite his mental impairments. These records provide substantial evidence to support ALJ Fishman's determination. Accordingly, the ALJ did not abuse his discretion by discounting Dr. Eaton's opinion, and his residual functional capacity determination was therefore proper.

### B. Decision of the Appeals Council

The Appeals Council must consider new, material, and chronologically relevant evidence. See Ingram v. Comm'r of Soc. Sec., 496 F.3d 1253, 1261–62 (11th Cir. 2007); 20 C.F.R. §§ 404.970(b) & 416.1470(b). Material evidence is evidence that is "relevant and probative so that there is a reasonable possibility that it would change the administrative result." Milano v. Bowen, 809 F.2d 763, 766 (11th Cir. 1987). When a plaintiff submits additional

evidence to the Appeals Council, the Court must determine whether substantial evidence on the record as whole, including additional evidence submitted to the Appeals Council, supports the ALJ's decision and whether the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the weight of evidence. See 20 C.F.R. §§ 404.970(b) & 416.1470(b); Ingram, 496 F.3d at 1257, 1261–62, 1266–67 (citing Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124 (1999)).

In its review, the Appeals Council stated that it considered the additional evidence documenting Plaintiff's mental health counseling and evaluated whether the ALJ's decision was contrary to the weight of the evidence. (Doc. 11-2, pp. 3–4.) Thus, contrary to Plaintiff's first enumeration of error, the Appeals Council did not err by failing to consider the additional evidence. See Barclay v. Comm'r of Soc. Sec., 274 F. App'x 738, 743 (11th Cir. 2008). The Appeals Council then found that Plaintiff's submission of the additional evidence did not provide a basis for changing the ALJ's decision. (Doc. 11-2, p. 4.) Though the Appeals Council did not extensively discuss the impact of this additional evidence on its analysis, the Eleventh Circuit recently held that brief articulations such as this one are proper. See Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780 (11th Cir. 2014) (Appeals Council not required to provide a discussion of claimant's new evidence in denying request for review of ALJ's decision where Appeals Council considered the evidence and determined it did not establish error in the ALJ's decision); Recala v. Soc. Sec. Admin., Comm'r, 594 F. App'x 592, 593 (11th Cir. 2015) (relying on Mitchell).

Notwithstanding the additional evidence, substantial evidence on the record as a whole supports the ALJ's decision, and, as the Appeals Council noted, the ALJ's decision is not contrary to the weight of the evidence. First, as discussed above, Dr. Eaton concluded that

9

Plaintiff could likely perform basic work tasks and could successfully engage in daily living activities. (Doc. 11-9, pp. 63–65.) Multiple physicians offered opinions consistent with those of Dr. Eaton, concluding that, despite his impairments, Plaintiff was capable of performing reduced light to medium work. (Doc. 11-9, p. 94; Doc. 11-10, pp. 2–10, 18–26.) Furthermore, because the counseling sessions were not conducted by a physician or licensed psychologist, the records documenting these sessions do not qualify as medical opinions from an "acceptable medical source."[5] Though the Appeals Council must consider evidence derived from "other sources," i.e., evidence not derived from an "acceptable medical source," the Appeals Council does not abuse its discretion by according little weight to these non-medical opinions.

> The evaluation of an opinion from a medical source that is not an "acceptable medical source" depends on the particular facts in each case. Each case must be adjudicated on its own merits based on a consideration of the probative value of the opinions and a weighing of all the evidence in that particular case.

SSR 06-03. Because ample medical evidence on record indicates that Plaintiff's depression and anger do not significantly impact his ability to work, the Appeals Council did not abuse its discretion by according little weight to additional non-medical evidence documenting Plaintiff's attendance of mental health counseling. Accordingly, the Appeals Council properly denied Plaintiff's request for review because the ALJ's decision was not contrary to the weight of the evidence.

## V. Credibility Determination

Plaintiff argues that ALJ Fishman also erred by improperly discrediting Plaintiff's testimony regarding his subjective complaints of pain. Plaintiff avers that medical evidence on

---

[5] An "acceptable medical source" is a licensed physician or licensed or certified psychologist. 20 C.F.R. § 416.913(a). Plaintiff's mental health evaluations were conducted and signed by Nannette Brannon, a Licensed Professional Counselor. (Doc. 11-10, pp. 60–94.) A counselor is not considered an acceptable medical source, but is classified as an "other source" of evidence. See 20 C.F.R. § 416.913(a) (identifying acceptable medical sources); see also 20 C.F.R. § 416.913(d) (identifying "other sources").

10

record verifies his testimony, and that the ALJ therefore abused his discretion by substituting his opinion for the opinions of Plaintiff's medical providers. Defendant argues that Plaintiff's subjective complaints of pain are inconsistent with the record and that substantial evidence supports ALJ Fishman's adverse credibility determination.

"If a plaintiff testifies as to his subjective complaints of disabling pain and other symptoms, . . . the ALJ must clearly 'articulate explicit and adequate reasons' for discrediting the claimant's allegations of completely disabling symptoms." Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Foote v. Chater, 67 F.3d 1553, 1561–62 (11th Cir. 1995)). An ALJ's credibility determination need not "cite 'particular phrases or formulations'[,] but it cannot merely be a broad rejection which is 'not enough to enable [a reviewing court] to conclude that [the ALJ] considered [a plaintiff's] medical condition as a whole.'" Id. at 1210–11 (quoting Foote, 67 F.3d at 1561).

Review of ALJ Fishman's decision reveals that he considered Plaintiff's medical condition as a whole and clearly articulated the reasons behind his credibility determination. First, ALJ Fishman cited numerous medical records supporting his conclusion that Plaintiff inaccurately reported the severity of his pain and disability. Second, ALJ Fishman noted that, after a workers' compensation injury in 2008, Plaintiff was released to go back to work without limitation after his alleged date of onset of disability. (Doc. 11-2, p. 36.) Additionally, the ALJ found Plaintiff's claims that his pain was a level ten on a scale from one-to-ten a clear exaggeration in light of his medical records and reported daily activities.[6] (Id.)

The ALJ also noted that Plaintiff provided several inconsistent statements regarding his level of physical activity. While Plaintiff claimed that he could only bathe in a sink and required

---

[6] In this regard, the ALJ stated that "[c]learly, if the [plaintiff] was constantly experiencing the worst pain possible, he would not be able to perform any level of physical function." (Doc. 11-2, p. 36.)

11

assistance, his wife indicated that Plaintiff was able to care for himself. (Doc. 11-2, p. 37; Doc. 11-6, pp. 39, 48.) Though Plaintiff testified at the hearing that he cannot sit or stand and spends most of his time lying down, Plaintiff was able to sit through his one-hour long consultative appointment with Dr. Eaton and regularly attends church and bible study. (Doc. 11-2, pp. 37, 73, 77.) Similarly, a consultative examination by Dr. Wallace revealed that Plaintiff had full range of motion of all joints except the cervical spine, full range of motion of all musculoskeletal systems except the hips and lumbar spine, and no limitations on the use of his hands. (Id. at p. 38, Doc. 11-9, pp. 36, 93–94.)

ALJ Fishman found that additional inconsistent testimony further eroded Plaintiff's credibility. For example, while Plaintiff initially testified that his physical impairments prevented him from driving, he later testified that he does not drive because he lost his license. (Doc. 11-2, pp. 37, 61; Doc. 11-6, p. 41.) Plaintiff's wife confirmed the latter testimony. (Doc. 11-6, p. 50.) In a form submitted in connection with his disability claim, Plaintiff alleged cardiovascular impairment and, on September 22, 2010, informed a consultative examiner that he had experienced chest pain for four years. (Doc. 11-2, p. 37; Doc. 11-6, p. 45; Doc. 11-9, p. 34.) However, CT scans and other scans failed to show cardiovascular impairment. (Doc. 11-2, p. 37; Doc. 11-9, p. 10.) Furthermore, Plaintiff's medical records indicate he first complained of chest pains on July 14, 2010, (doc. 11-8, p. 54), and at a follow-up appointment on August 13, 2010, alleged his chest pain began six weeks prior to that visit.[7] (Id. at p. 30.)

---

[7] In addition to these inconsistent statements, ALJ Fishman also found Plaintiff's testimony that he had not consumed alcohol since 2004 inconsistent with an admission to his primary care physician that he drank alcohol in 2009. (Doc 11-2, p. 37.) ALJ Fishman also found Plaintiff's testimony that he had never done drugs inconsistent with a 2009 drug screening testing positive for opiates and TCA. (Id.) The ALJ's conclusion that Plaintiff consumed alcohol in 2009 appears to be based upon a medical record classifying Plaintiff's "Social History" as "significant for alcohol." (Doc. 11-8, p.12.) Because this information is recorded under a section labeled "Social History," this record appears to indicate that Plaintiff merely informed his primary care physician of his past alcohol abuse, as opposed to current

12

Credibility determinations are the province of the ALJ, and the Court will not disturb a clearly articulated credibility finding absent substantial evidence. Mitchell v. Comm'r, Soc. Sec. Admin., 771 F.3d 780, 782 (11th Cir. 2014). Because ALJ Fishman clearly articulated the reasons cited above for finding Plaintiff's testimony not credible, this enumeration of error is without merit.

## CONCLUSION

Based on the foregoing, I **RECOMMEND** that the Court **AFFIRM** the decision of the Commissioner. I also **RECOMMEND** that the Court **CLOSE** this case.

Any party seeking to object to this Report and Recommendation is **ORDERED** to file specific written objections within fourteen (14) days of the date on which this Report and Recommendation is entered. Any objections asserting that the Magistrate Judge failed to address any contention raised in the pleading must also be included. Failure to do so will bar any later challenge or review of the factual findings or legal conclusions of the Magistrate Judge. See 28 U.S.C. § 636(b)(1)(C); Thomas v. Arn, 474 U.S. 140 (1985). A copy of the objections must be served upon all other parties to the action.

The filing of objections is not a proper vehicle through which to make new allegations or present additional evidence. Furthermore, it is not necessary for a party to repeat legal arguments in objections.

Upon receipt of objections meeting the specificity requirement set out above, a United States District Judge will make a *de novo* determination of those portions of the report, proposed findings, or recommendation to which objection is made and may accept, reject, or modify in whole or in part, the findings or recommendations made by the Magistrate Judge. Objections not

---

alcohol abuse. The Court also notes Plaintiff's argument that the presence of opiates in his drug screening is attributable to his prescribed pain medication. Nevertheless, substantial evidence on record supports the ALJ's adverse credibility determination.

meeting the specificity requirement set out above will not be considered by a District Judge. A party may not appeal a Magistrate Judge's report and recommendation directly to the United States Court of Appeals for the Eleventh Circuit. Appeals may be made only from a final judgment entered by or at the direction of a District Judge. The Clerk of Court is **DIRECTED** to serve a copy of this Report and Recommendation upon the parties.

**SO ORDERED** and **REPORTED** and **RECOMMENDED**, this 7th day of December, 2015.

R. STAN BAKER
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA